UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCI PATERA,<br><br>    Plaintiff,<br><br>    v.<br><br>CITIBANK, N.A., et al.,<br><br>    Defendants. | Case No. 14-cv-04533-JSC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 11 |

Plaintiff Marci Patera brings this action seeking to prevent foreclosure of her home. She sues Defendants Citibank, N.A., and CitiMortgage, Inc. (together, "Defendants"). Now pending before the Court is Defendants' Motion to Dismiss. (Dkt. No. 11.) Defendants seek to dismiss Plaintiff's First Amended Complaint ("FAC") for failure to state a claim upon which relief can be granted and for failure to join a necessary and indispensable party. After carefully considering the arguments and briefing submitted, the Court concludes that oral argument is unnecessary, *see* Civ. L.R. 7-1(b), and GRANTS Defendants' motion to dismiss with leave to amend.

**FACTUAL & PROCEDURAL BACKGROUND**

Plaintiff and her ex-significant other Roy Bartlett ("Bartlett") purchased the subject property located at 308 Iron Horse Court, Alamo, California in 1999. (Complaint at ¶ 14.) The purchase was financed through a $1,000,000 loan from Citibank Service Corporation which was subsequently assigned to Defendant CitiMortgage. (*Id*.; Dkt. No. 13-1 at 15.)[1] Plaintiff and

---

[1] Pursuant to Federal Rule of Evidence 201, the Court "may judicially notice a fact that is not subject to reasonable dispute because it: (i) is generally known within the trial court's

1  Bartlett subsequently took out two additional mortgages in 2004 and 2005 for $449,500 and
2  $250,000 respectively, which were likewise serviced by CitiMortgage. (Complaint at ¶¶ 16-17;
3  Dkt. No. 13-1, Exs. D-E.) The monthly payments on these mortgages were timely made for years.
4  (Complaint at ¶¶ 14-17.)

5  In 2007, Plaintiff became physically disabled. (*Id*. at ¶ 18.) Nonetheless, the monthly
6  payments continued to be made until November 2010 when Bartlett lost his job. (*Id*. at ¶ 19.) At
7  that time, Plaintiff and Bartlett were unable to make their monthly mortgage payments of
8  approximately $9,500. (*Id*. at ¶ 20.) Bartlett contacted CitiBank Private Bank of whom he was a
9  customer to attempt to make "hardship" arrangements and thereafter submitted a "Hardship
10 Assistance Package" in April 2011. (*Id*.) Two months later, the Director of CitiBank Private
11 Bank, Vita Cusumano, sent Bartlett an email indicating that the loan modification had been
12 approved and including key terms regarding a lower interest rate, forgiveness of all late fees and
13 penalties accumulated to date, and stating that the new lower monthly payment for all three loans
14 would be $5,996.93. (*Id*. at ¶ 21.) Bartlett told Plaintiff that CitiBank was drawing up the papers
15 and had told him to make the new lower monthly payment on June 15, 2011. (*Id*.) However,
16 Bartlett was unable to do so online, and thus sent an email to Ms. Cusumano asking for assistance.
17 (*Id*. at ¶ 22.) Ms. Cusumano arranged for the payments to be debited from Bartlett's CitiBank
18 account instead. (*Id*. at ¶ 23.)

19 Neither Plaintiff nor Bartlett ever received the loan modification paperwork. (*Id*. at ¶¶ 23-
20 24.) They both attempted to follow up with CitiBank regarding the loan modification and in
21 September 2011 they were told that they needed an appraisal for the property. (*Id*. at ¶ 25.) A
22 month later, Plaintiff and Bartlett were told that the loan modification was being submitted to
23 CitiBank "upper management." (*Id*. at ¶ 26.) Shortly thereafter, a CitiBank representative, Ms.

---

territorial jurisdiction; or (ii) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Judicial notice is appropriate for "materials incorporated into the complaint or matters of public record." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). Defendants request judicial notice of Exhibits A-N, which are documents that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evd. 201. Therefore, the Court GRANTS Defendants' request for judicial notice of these documents. (Dkt. No. 13)

2

Douglas, emailed Plaintiff and Bartlett with proposed loan modification terms which they agreed to and the paperwork was again forwarded to CitiBank upper management. (*Id*. at ¶¶ 30-32.) A month later, Ms. Douglas informed Plaintiff and Bartlett that they would need to submit a new Hardship Assistance Package which they did. (*Id*. at ¶¶ 33-34.)

In January 2012, Plaintiff emailed Ms. Douglas to follow up on the status of the loan modification, but did not receive a response to her inquiries. (*Id*. at ¶ 35.) Two months later, Bartlett informed Plaintiff that he had received a telephone call from Ms. Douglas indicating that the request for a loan modification was likely to be denied. (*Id*. at ¶ 37.) Plaintiff and Bartlett attempted to follow-up with CitiBank representatives including Ms. Douglas throughout March and April 2012. (*Id*. at ¶¶ 38-45.) In May 2012, Bartlett submitted additional documentation regarding his income and Plaintiff received confirmation from CitiBank that she had provided all the necessary documentation. (*Id*. at ¶¶ 46-47.)

Over the next two months Plaintiff and Bartlett attempted to regularly follow-up regarding the status of their loan modification, and in late July 2012 they were told that the loan modifications "looked good" and they had secured "preliminary approval." (*Id*. at ¶¶ 48-53.) After much back and forth in October 2012, Plaintiff and Bartlett were advised that the loan modifications had been approved and the only question was whether they would be done as one loan or three loans. (*Id*. at ¶ 60.) Plaintiff and Bartlett attempted to follow-up throughout October and November, and then in mid-November, Plaintiff was contacted by a new unidentified CitiBank representative who told her they needed to submit another loan modification application. (*Id*. at ¶¶ 61-64.) Two days later, Bartlett's attorney advised Bartlett and Plaintiff that he had received a Notice of Default which had been recorded on November 1, 2012. (*Id*. at ¶ 65.) Nonetheless, on November 26, 2012, a CitiBank representative informed Plaintiff that the loan modification had been approved and informed her that servicing of the loan was being transitioned to CitiMortgage and gave her a new point of contact there. (*Id*. at ¶ 66.) This new point of contact, Ms. Villanueva, advised Plaintiff and Bartlett that they needed to submit a new loan modification application. (*Id*.) That same day Bartlett's attorney received another Notice of Default. (*Id*. at ¶ 67.)

In January 2013, Plaintiff and Bartlett submitted a new loan modification. (*Id*. at ¶ 68.) After more back and forth including requests to resubmit documents which had already been submitted, on February 22, 2013, Plaintiff and Bartlett were told that CitiBank had all the necessary paperwork and that CitiBank would not pursue any further foreclosure . (*Id*. at ¶ 70.) Three days later Bartlett received a Notice of Trustee Sale, which was subsequently postponed. (*Id*.) Over the next several months, Plaintiff and Bartlett continued to follow-up with CitiBank and two more Notices of Trustee Sale were recorded against the property. (*Id*. at ¶¶ 71-72.) In October 2013, CitiBank offered a loan modification on the second mortgage loan only, but simultaneously recorded another Notice of Trustee Sale. (*Id*. at ¶ 74.) The following month Plaintiff was informed that foreclosure was imminent and her only options were short sale, foreclosure or repayment. (*Id*. at ¶ 78.)   Three days later, Plaintiff was notified that they were approved modifications on all three loans. (*Id*. at ¶ 80.) Plaintiff continued to follow-up regarding the status of the loan modifications throughout December 2013, but she did not receive a response although a further Notice of Trustee Sale was postponed. (*Id*. at ¶¶ 81-87.)

The current status of Plaintiff's loan modification applications and the subject property is unclear.

Plaintiff filed the underlying action in October 2014 alleging thirteen state law claims against Defendants CitiBank, N.A. and CitiMortgage including (1) deceit: promise made without intent to perform; (2) deceit: intentional misrepresentation; (3) fraud and deceit: suppression of material facts; (4) fraud and deceit: negligent misrepresentation; (5) negligence; (6) violations of California Business and Professions Code § 17200; (7) promissory estoppel; (8) breach of contract; (9) breach of contract: October 2012 Modification Agreement; (10) slander of title; (11) cancellation of instruments; (12) violation of the Rosenthal Fair Debt Collection Practices Act; and (13) breach of the covenant of good faith and fair dealing. Defendants thereafter filed the now pending motion to dismiss contending that the Court lacks subject matter over the action, or alternatively, that Plaintiff has failed to state a claim upon which relief could be granted.

//

//

# LEGAL STANDARD

### A. Rule 12(b)(1)

A party challenging the court's subject matter jurisdiction under Rule 12(b)(1) may bring a facial challenge or a factual challenge. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A facial attack is one where "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In evaluating such a challenge, the court accepts the factual allegations in the complaint as true. *See Miranda v. Reno*, 238 F.3d 1156, 1157 n.1 (9th Cir. 2001).

### B. Rule 12(b)(7)

Pursuant to Federal Rule of Civil Procedure 12(b)(7), a party may move to dismiss a case for "failure to join a party under Rule 19." Rule 19 imposes a three-step inquiry: (1) whether the absent party is necessary (i.e., required to be joined if feasible) under Rule 19(a); (2) if so, whether it is feasible to order that absent party to be joined; and (3) if joinder is not feasible, whether the case can proceed without the absent party, or whether the absent party is indispensable such that the action must be dismissed. *Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012). "The Ninth Circuit has held that a court should grant a 12(b)(7) motion to dismiss only if the court determines that joinder would destroy jurisdiction and the nonjoined party is necessary and indispensable." *Biagro W. Sales Inc. v. Helena Chem. Co.*, 160 F.Supp.2d 1136, 1141 (E.D. Cal. 2001) (citing *Shermoen v. United States*, 982 F.2d 1312, 1317–18 (9th Cir. 1992)). The burden is on the moving party to produce evidence in support of the motion. *Id.*; *see also Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir.1990).

### C. Rule 12(b)(6)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint where the action fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility

standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). Under Federal Rule of Civil Procedure 8(a)(2) a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 554 (internal citations and quotations omitted).

For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009).

Generally, when a complaint is dismissed, "leave to amend shall be freely given when justice so requires." *Carvalho v. Equifax Info. Servs.*, LLC, 629 F.3d 876, 892 (9th Cir. 2010); *see* Fed. R. Civ. P. 15(a). The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

### A. Subject Matter Jurisdiction

Defendants move to dismiss this action for lack of subject matter jurisdiction because no federal question is alleged and Defendants contend that Plaintiff has not adequately pled diversity jurisdiction. Federal courts have original jurisdiction where the opposing parties are citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). "In actions

seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). "If the primary purpose of a lawsuit is to enjoin a bank from selling or transferring property, then the property is the object of the litigation." *Reyes v. Wells Fargo Bank, N.A.*, No. 10-1667, 2010 WL 2629785, at *4 (N.D. Cal. June 29, 2010) (collecting cases).

Here, Plaintiff seeks to enjoin Defendants from foreclosing on the subject property which Plaintiff purchased through a loan secured by a Deed of Trust in the amount of $1,000,000. (Dkt. No. 13-1, Ex. B.) The property is further secured by two additional Deeds of Trust in the amount of $ $449,500 and $250,000, respectively. (Dkt. No. 13-1, Exs. D & E.) Further, Plaintiff alleges that she and Defendants are citizens of different states. Plaintiff has thus adequately pled federal diversity jurisdiction and Defendants' motion to dismiss pursuant to Rule 12(b)(1) is denied.

**B. Failure to Join Bartlett, the Co-Borrower**

Next, Defendants contend that dismissal is required because Plaintiff has failed to join Rob Bartlett, the co-borrower. According to Defendants, Bartlett is a necessary and indispensable party and Plaintiff's failure to join him should result in dismissal of this action. In response, Plaintiff simply asserts that this is not true and that she "has every right to sue on her own, as she has a right to sue on her own terms and in the appropriate venue." (Dkt. No. 20 at 6:12-14.) Plaintiff also contends that Bartlett has separately sued Defendants in state court.

In order to determine whether dismissal is appropriate, the Court engages in "three successive inquiries." *EEOC v. Peabody Western Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005). First, the district court must determine whether the absent party is a "required" party. *Id.*; *see also* Fed. R. Civ. P. 19(a). A party is required if "in that person's absence, the court cannot accord complete relief among existing parties;" or "that person claims an interest relating to the subject of the action" such that it would "impair or impede the person's ability to protect the interest;" or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a).

Here, the Deeds of Trust reveal that Plaintiff and Bartlett are both listed as co-borrowers. (Dkt. No. 13-1, Exs B, D & E.) Plaintiff's interest in the property as well as the claims asserted in

7

this action are thus parallel to those of Bartlett; however, Plaintiff seeks a declaration that she is the "true and rightful owner of the property that is the subject of this lawsuit (commonly known as 308 Iron Horse Court, Alamo, CA 94507)." (Dkt. No. 1 at 50:22-24.) Such a declaration would necessarily impede Bartlett's ability to protect any property interest he may have in the property. Further, Defendants would be at risk of multiple and potentially inconsistent obligations without Bartlett's participation. Accordingly, Bartlett is "required" as a plaintiff pursuant to Rule 19(a). *See, e.g., Trinh v. Citibank, NA*, No.12-CV-03902, 2012 WL 6574860, at *2 (N.D. Cal. Dec. 17, 2012) (concluding that joinder of plaintiff's husband, the co-borrower, was required because the husband's "absence from this action would necessarily impair his ability to protect his interest" where plaintiff sought a "declaration that the title to the Subject Property is vested in Plaintiff alone"); *Edwards v. Fed. Home Loan Mortgage Corp*., No. C 12-04868, 2012 WL 5503532, at *3 (N.D. Cal. Nov. 13, 2012) (holding that the plaintiff's husband, a co-borrower on the underlying loan, was a necessary and indispensable party because "Plaintiff's interest in the Property and her claims asserted regarding the foreclosure are coterminous with [her husband's] interest and claims. If [her husband] is not joined as a party, Defendants have a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of Plaintiff's and [her husband's] mutual interests relating to the Property.")

The Court must next consider whether Bartlett's joinder is feasible. "Rule 19(a) sets forth three circumstances in which joinder is not feasible: when venue is improper, when the absentee is not subject to personal jurisdiction, and when joinder would destroy subject matter jurisdiction." *Peabody Western Coal Co*., 400 F.3d at 779. Here, Defendants do not argue, and the Court does not find any reason, why joinder of Bartlett would not be feasible. Moreover, since all of Plaintiff's claims will be dismissed with leave to amend Plaintiff will have the opportunity to join him as a party in an amended complaint.

Defendants also contend that dismissal is proper based on Plaintiff's failure to join Northwest Trustee Services., Inc., ("Northwest") because the Tenth and Eleventh Causes of

8

Action (Slander of Title and Cancellation of Instruments)² are alleged primarily against Northwest. Because the Court dismisses of these claims for the reasons discussed *infra*, the Court declines to address the joinder argument with respect to Northwest.

### C. Adequacy of Plaintiff's Allegations

Defendants move to dismiss each of Plaintiff's thirteen causes of action for failure to state a claim upon which relief could be granted. Plaintiff, for her part, has not addressed Defendant's arguments with specificity, and instead, argues that all her allegations are sufficiently pled without reference to the adequacy of her allegations with respect to any particular cause of action. Plaintiff's arguments, however, only address her fraud, misrepresentation, and negligence claims (Causes of Actions One through Five). It is unclear whether in doing so Plaintiff concedes that the causes of action wholly unaddressed in her opposition brief (Six through Thirteen) fail to state a claim or whether she opposes the motion in its entirety based on the same generalized adequacy of allegations argument.³

#### 1. Deceit/Fraud claims (First, Second and Third Causes of Action) and Negligent Misrepresentation (Fourth Cause of Action)

Plaintiff brings three fraud claims and a negligent misrepresentation claim. In order to state a claim for fraud, Plaintiff must allege facts showing that the Defendants: (1) made a misrepresentation to Plaintiff; (2) Defendants knew the representation was false; (3) Defendants intended to induce Plaintiff to rely on the misrepresentation; (4) Plaintiff justifiably relied on the misrepresentation; and (5) damages. *Lovejoy v. AT & T Corp.*, 92 Cal.App.4th 85, 93, 111 Cal.Rptr.2d 711 (2001) (internal citation omitted). "The same elements comprise a cause of action for negligent misrepresentation, except there is no requirement of intent to induce reliance." *Caldo v. Owens–Illinois, Inc.*, 125 Cal.App.4th 513, 519, 23 Cal.Rptr.3d 1 (2004). Defendants contend that Plaintiff's allegations do not satisfy the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure because Plaintiff has not alleged a false misrepresentation and

---

² Defendants misidentify these as the Ninth and Tenth Causes of Action. (Dkt. No. 12 at 15:20-21.)
³ Defendants move to dismiss what they style as Plaintiff's Fourteenth Cause of Action for Declaratory Relief. While it is listed that way on the caption, it is not separately pled as another cause of action in the Complaint itself.

9

because the economic loss rule precludes recovery.

Rule 9(b) states: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9. Thus, the Ninth Circuit has held that, "while a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). "The requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal.App.4th 153, 157, 2 Cal.Rptr.2d 861 (1991).

Plaintiff alleges the following misrepresentations: (1) CitiBank would consider her for a loan modification, (2) that it would not pursue foreclosure while doing so, and (3) that any costs and fees associated with the modification would be waived. (Complaint at ¶¶ 141, 142, 162, 165 & 169.) Plaintiff has adequately alleged at least one misrepresentation; namely, that CitiBank would not pursue foreclosure while considering her for a loan modification, when despite these representations, Defendants recorded a Notice of Default and several Notices of Trustee Sale against the subject property.

Plaintiff has not, however, alleged specific facts supporting her reliance on Defendants' misrepresentation. Plaintiff "must allege the specifics of ... her reliance on the misrepresentation[s] to show a bona fide claim of actual reliance." *Cadlo v. Owens–Illinois, Inc.*, 125 Cal.App. 4th 513, 519 (2004). "Actual reliance occurs when the defendant's misrepresentation is an immediate cause of the plaintiff's conduct, altering [her] legal relations, and when, absent such representation, the plaintiff would not, in all reasonable probability, have entered into the transaction." *Id*. Here, Plaintiff merely alleges that she "justifiably relied on said

10

misrepresentations and concealment and, as a proximate result, Plaintiff suffered damages for each of the Defendants." (Complaint ¶ 156.) In her Third Cause of action for Fraud and Deceit-Suppression of Material Facts, Plaintiff alleges that she "was lead to believe that if she submitted the necessary financial documents that she would qualify for a loan modification;" however, Plaintiff has not adequately pled any representation to this effect. (*Id*. ¶ 167.)

Plaintiff has also not adequately alleged damages. It is not clear what damages Plaintiff claims to have suffered as a result of Defendant's conduct related to the loan modification process. Plaintiff seeks general, special, and punitive damages according to proof. However, California law does not impose any duty on lenders to agree to a loan modification. *See Lawrence v. Wells Fargo Bank, N.A*., No. C 14–1272, 2014 WL 2705425, at *8 (N.D. Cal. June 13, 2014) (citing *Hamilton v. Greenwich Investors UUVI, LLC*, 195 Cal.App. 4th 1602, 1617 (2011)).

Because the Court concludes that Plaintiff has failed to adequately allege fraud or misrepresentation for purposes of Rule 9(b), the Court does not reach Defendants' other argument in favor of dismissal. Defendants' motion to dismiss the First through Fourth Causes of action is granted with leave to amend.

### 2. Negligence (Fifth Cause of Action)

"The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate cause between the breach and (4) the plaintiff's injury." *Mendoza v. City of L.A*., 66 Cal.App.4th 1333, 1339, 78 Cal.Rptr.2d 525 (1998) (internal citation omitted). "The threshold element of a cause of action for negligence is the existence of a duty to use due care." *Paz v. State of Cal*., 22 Cal.4th 550, 559, 93 Cal.Rptr.2d 703 (2000) (internal citation omitted).

> In California, the test for determining whether a financial institution owes a duty of care to a borrower-client involves the balancing of various factors, among which are (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to him, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm.

*Biakanja v. Irving*, 49 Cal.2d 647, 650 (1958).

11

Plaintiff contends that Defendants owed her a fiduciary duty of care and a duty to disclose information to her regarding the loan modification process. Courts are divided on whether lenders owe a duty of care during loan modification negotiations. *See Gilmore v. Wells Fargo Bank N.A.*, No. 14-2389, 2014 WL 7183796, at *9 (N.D. Cal. Dec. 16, 2014) (summarizing cases). In *Alvarez v. BAC Home Loan Servicing, L.P.*, 228 Cal.App. 4th 941 (2014), the California Court of Appeals held that, because "defendants allegedly agreed to consider modification of the plaintiffs' loans, the *Biakanja* factors clearly weigh in favor of a duty." *Id*. at 948. However, there is a compelling line of cases which conclude that "even where a lender offers a loan modification, that is nothing more than a renegotiation of loan terms. This renegotiation is the same activity that occurred when the loan was originated; the only difference being that the loan is already in existence." *Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1162 (N.D. Cal. 2013) (internal quotation marks omitted) (collecting cases regarding the same).

The Court need not reach this issue, however, as to the extent that Plaintiff's negligence claim is based on an allegation that Defendants represented that they "would help Plaintiff save her home through the avenue of a loan modification," the claim is not adequately pled. Even assuming Defendants owed Plaintiff a duty to exercise "reasonable care in the processing of a loan modification," Plaintiff fails to allege sufficient facts to show how this duty was breached and how she was injured. *Cf. Alvarez v. BAC Home Loan Servicing, L.P.*, 228 Cal.App. 4th 941, 948–951 (2014) (holding that plaintiff had stated a claim for negligence based on the plaintiffs' allegations in that case "that defendants owed them a duty to exercise reasonable care in the review of their loan modification applications once they had agreed to consider them"). Plaintiff alleges that Defendants offered her a loan modification, but does not indicate that she accepted the offer, and further, no trustee's sale has taken place. Moreover, it is unclear what damages Plaintiff seeks. In her Complaint, Plaintiff seeks unspecified general and specific damages according to proof; however, she remains in possession of the property and has not submitted any mortgage payments since June 2011. (Complaint at ¶¶ 23, 81.)

Accordingly, Plaintiff's negligence claim is likewise dismissed for failure to state a claim with leave to amend.

### 3. Remaining Causes of Action (Sixth through Thirteenth)

Plaintiff's opposition does not specifically address Defendants' motion to dismiss her Sixth through Thirteenth Causes of Actions. Instead, she generally complains that Defendants know what the claim is as they created the documents upon which her claim is based.

#### a) Sixth Cause of Action: Section 17200 Claim under the HBOR

Plaintiff alleges a violation of California's Business and Professions Code § 17200 based on the unfair business practice of dual-tracking of modification and foreclosure in violation of California state law. (Complaint at ¶ 190.) The California Homeowner Bill of Rights ("HBOR") is a "state law designed to both provide protections for homeowners facing [non-judicial] foreclosure and reform aspects of the foreclosure process" which took effect on January 1, 2013. *Shapiro v. Sage Point Lender Servs.*, No. 14-1591, 2014 WL 5419721, at *4 (C.D. Cal. Oct. 24, 2014) (citing Cal. Civ. Code § 2923.4(a)). Among its protections to home borrowers, the HBOR "attempts to eliminate the practice, commonly known as dual tracking, whereby financial institutions continue to pursue foreclosure even while evaluating a borrower's loan modification application." *Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1149 (N.D. Cal. 2013); *see* Cal. Civ. Code § 2923.4 (noting that the purpose of the act is to ensure that borrowers are "considered for, and have a meaningful opportunity to obtain, available loss mitigation options" in order to avoid foreclosure). Thus, while a borrower's complete application for a first lien loan modification is pending, the servicer may not record a notice of default, notice of trustee's sale, or conduct a trustee's sale. *See* Cal. Civ. Code § 2923.6(c).

Defendants move to dismiss Plaintiff's Section 17200 claims on numerous grounds including that many of the allegations pre-date the HBOR's effective date of January 2013, and significantly, that the HBOR only applies to first lien mortgages and no foreclosure proceedings have commenced against the first lien mortgage. Plaintiff does not respond to these arguments and the judicially noticeable documents including the Notice of Default and Notices of Trustee Sale all appear to be with respect to the second and third lien mortgages. (Dkt. No. 13-1, Exs. H-N.) Moreover, even if Plaintiff were to allege that the alleged activities covered her first lien mortgage as well, the claim is still problematic as (1) Plaintiff is ineligible for damages as no

13

trustee's sale has been recorded, *see* Cal. Civ. Code § 2924.12(a)(1); (2) Plaintiff has failed to allege that she submitted a complete application for a loan modification, *see* Cal. Civ. Code § 2923.6(h); and (3) Plaintiff has not adequately pled a claim under Section 17200 because she lacks standing, and has not alleged an unlawful, unfair, or fraudulent business practice.

### b) Seventh Cause of Action: Promissory Estoppel

Promissory estoppel requires: (1) a promise that is clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his or her reliance. *Boon Rawd Trading Int'l Co. v. Paleewong Trading Co.*, 688 F.Supp.2d 940, 953 (N.D. Cal. 2010). Defendants contend that Plaintiff cannot show detrimental reliance as Defendants reviewed Plaintiff's loan modification application and offered her a loan modification which she did not accept. It is thus unclear how Plaintiff can allege detrimental reliance. *See, e.g*, *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 79 (2013) (concluding that "[t]ime and effort spent assembling materials for an application to modify a loan" is insufficient to establish detrimental reliance). Further, as with Plaintiff's fraud and misrepresentation claims, Plaintiff has not adequately alleged reliance or injury.

### c) Eighth and Ninth Causes of Action: Breach of Contract

The elements to state a claim for breach of contract are: (1) existence of the contract, (2) performance by the plaintiff or excuse for nonperformance, (3) breach by the defendant, and (4) damages. *First Commercial Mortgage Co. v. Reece*, 89 Cal.App. 4th 731, 745 (2001). In her Eighth Cause of Action, Plaintiff alleges breach based on CitiBank's offer of a loan modification for all three loans on June 1, 2011, Bartlett's subsequent oral and/or written acceptance of the offer, and the subsequent withdrawal of the first modified payment from Bartlett's account. (Complaint ¶ 208.) Defendants contend that Plaintiff has failed to allege essential terms of the alleged modification agreement without which there is no actual agreement to be enforced. Defendants also argue that by Plaintiff's own admission the agreement was never signed, and instead, Plaintiff was told she needed to re-apply. (*Id*. at ¶ 33.) Finally, Defendants contend that Plaintiff cannot allege damages because any payments made were already required under the

terms of the original loan contract.

Courts are split regarding whether a breach of contract claim can be predicated on an oral loan modification agreement. *Rockridge Trust v. Wells Fargo NA*, No. 13-01457, 2014 WL 688124, at *12 (N.D. Cal. Feb. 19, 2014) (collecting cases). Courts are likewise split on whether a party can allege damages based on a breach of loan modification agreement where the payments were already required under the terms of the original loan agreement. *See Sutcliffe v. Wells Fargo Bank, N.A.*, 283 F.R.D. 533, 553 (N.D. Cal. 2012) (concluding that plaintiffs had not adequately alleged damages where the only alleged damages were the reduced payments plaintiffs made under the trial loan modification because plaintiffs had a preexisting duty to make payments on their loan); *But see Rockridge Trust v. Wells Fargo NA*, No. 13-01457, 2014 WL 688124, at *12 (N.D. Cal. Feb. 19, 2014) (concluding that plaintiff's claim that they did not pursue injunctive relief options and incurred other fees, including attorneys fees, loss of property value, damage to plaintiff's reputation and time were sufficient to state a claim for damages and collecting cases regarding the same).

Here, the Court concludes that Plaintiff has failed to adequately allege a breach of contract claim with respect to the June 2011 oral modification agreement. First, the terms of the contract are indefinite. In order to state a claim for breach of contract, a party must allege terms that are "sufficiently definite (and this is a question of law) for the court to ascertain the parties' obligations and to determine whether those obligations have been performed or breached." *Bustamante v. Intuit, Inc.*, 141 Cal.App.4th 199, 209, 45 Cal.Rptr.3d 692 (2006). Plaintiff alleges that Bartlett forwarded her an email from Ms. Cusumano at CitiBank Private Bank which identified the key terms of the modification including a lower interest rate, forgiveness of all late fees and penalties, and a lower monthly payment, but Plaintiff does not otherwise specify these terms except with respect to the lower monthly payment. (Complaint ¶ 21.) Second, consideration is lacking—doing or promising to do what one is already legally bound to do cannot be consideration for a promise. *See* Witkin, Summary of California Law (10th ed. 2005) Contracts § 218. Plaintiff has not alleged that she was required to submit additional documentation and the payment submitted was already owing under the terms of the original loan

agreements. *See Sutcliffe*, 283 F.R.D. at 553 (concluding that plaintiffs had adequately alleged consideration where they were required to submit financial documents that were not required under the original loan and they agreed to go to credit counseling). Third and relatedly, Plaintiff's damages are inadequately pled—to the extent they are predicated on the submission of the reduced payments, this is insufficient. *Id.*

Plaintiff's Ninth Cause of Action for breach of contact based on the October 2012 modification agreement is even more problematic as Plaintiff has wholly failed to allege the terms of the contract, performance or consideration on Plaintiff's part, and damages.

Thus, the Eighth and Ninth causes of action must be dismissed for failure to state a claim.

### d) Tenth Cause of Action: Slander of Title (Tenth Cause of Action)

Slander of title includes the following elements: (1) a publication, (2) that is false, and (3) without privilege or justification, and (4) that causes direct or pecuniary loss. *See Dubose v. Suntrust Mortg., Inc.*, No. 11–03264, 2012 WL 1376983, at *3 (N.D. Cal. Apr. 19, 2012). Plaintiff's slander of title allegations all relate to Northwest, but Northwest is not a party to this action. This claim must be dismissed.

### e) Eleventh Cause of Action: Cancellation of Instruments

Under California Civil Code § 3412 "[a] written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled." Plaintiff appears to allege cancellation based on fraud; however, as discussed above, Plaintiff has failed to adequately allege fraud. Thus, this claim is likewise insufficiently pled.

### f) Twelfth Cause of Action: Violation of the Rosenthal Fair Debt Collection Practices Act

The Rosenthal Act is intended "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts." Cal. Civ.Code § 1788.1. Under the Rosenthal Act, a "debt collector" is defined as "any person who, in the ordinary course of business, regularly, on

behalf of himself or herself or others, engages in debt collection." *Id*. § 1788.2(c). "[T]he definition of 'debt collector' is broader under the Rosenthal Act than it is under the FDCPA, as the latter excludes creditors collecting on their own debts." *Reyes v. Wells Fargo Bank*, *N.A*., No. 10–01667, 2011 WL 30759, at *19 (N.D. Cal. Jan. 3, 2011). "Thus, a mortgage servicer may be a 'debt collector' under the Rosenthal Act even if it is the original lender, whereas, such an entity would be excluded from the definition of debt collector under the federal act." *Id*. (citing *Herrera v. LCS Fin. Servs. Corp*., No. 09–02843, 2009 WL 5062192, at *2 (N.D. Cal. Dec. 22, 2009)). Here, however, Plaintiffs' claim is predicated on the misrepresentations alleged with respect to her fraud and negligent misrepresentation claim. For the same reasons the alleged misrepresentations failed to state a claim with respect to those causes of action, they likewise fail to state a claim for violation of the Rosenthal Act. Further, Plaintiff has not even alleged which portions of the Act she alleges were violated.

### g) Thirteenth Cause of Action: Breach of the Covenant of Good Faith and Fair Dealing

Plaintiff alleges that she entered into two loan modification agreements with Defendants, but Defendants frustrated her performance by refusing to accept payments and communicate with her. (Complaint ¶ 240.) The covenant of good faith and fair dealing, implied by California law in every contract, exists to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement or hindering the other party's performance. *See Guz v. Bechtel Nat'l, Inc*., 24 Cal.4th 317, 349 (2000); *Tanner v. Title Ins. & Trust Co*., 20 Cal.2d 814, 825 (1942). "The covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement" even if it does not technically violate the express terms of the agreement. *Waller v. Truck Ins. Exch*., 11 Cal.4th 1, 36 (1995). This claim fails for the same reasons as Plaintiff's breach of contract claims. *See Levy v. JP Morgan Chase*, No. 10–01493, 2010 WL 4641033, at *3 (S.D. Cal. Nov. 5, 2010)("A claim for breach of the implied covenant of good faith and fair dealing requires the same elements [as a claim for breach of contract], except that instead of showing that defendant breached a contractual duty, the plaintiff must show, in essence, that defendant deprived the plaintiff of a benefit conferred by the contract in violation of

17

the parties' expectations at the time of contracting."); *see also Curley v. Wells Fargo & Co.*, No. 13-03805, 2014 WL 7336462, at *5 (N.D. Cal. Dec. 23, 2014).

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is GRANTED under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and 12(b)(7) for failure to join a necessary and indispensable party. Any amended complaint must comply with the pleading standards set forth above. Plaintiff shall file her amended complaint by February 26, 2015.

**IT IS SO ORDERED**.

Dated: February 5, 2015

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge